**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: July 31, 2026
Date Decided: August 13, 2026

Travis S. Hunter, Esq.
Katharine L. Mowery, Esq.
Dionis Mucollari, Esq.
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Christopher P. Simon, Esq.
David G. Holmes, Esq.
Cross & Simon, LLC
1105 North Market Street, Suite 901
Wilmington, DE 19801

RE: *Melrose Wang Capital Investments LLC v. Houston Hotel Partners, LLC*,
C.A. No. 2025-1262-BWD

Dear Counsel:

This letter opinion resolves the defendants' motion to dismiss the operative amended complaint. The motion is denied in part and deferred in part pending jurisdictional discovery.

## I. BACKGROUND

Defendant Houston Hotel Partners, LLC (the "Company") is a Delaware limited liability company with its principal place of business in Texas. Verified Am. Compl. [hereinafter Am. Compl.] ¶ 5, Dkt. 14. The Company has four members: plaintiff Melrose Wang Capital Investments, LLC ("Plaintiff"), defendant AAFF-Houston Hotel Partners, LLC ("AAFF," and with the Company, "Defendants"), and nonparties Memphis Houston Hotel Investors, LLC ("MHHI") and Houston Hotel

State Investor, LLC ("HHSI").  *Id.*, Ex. 1 [hereinafter LLC Agt.], Dkt. 14.  AAFF invested over $5 million as an initial equity contribution and $3 million as a "First Priority Contribution," and received a 45.375% ownership interest.  Am. Compl. ¶ 14; LLC Agt., Ex. A.  Plaintiff invested $1.5 million as an initial equity contribution, and received an 8.25% ownership interest.  Am. Compl. ¶ 14; LLC Agt., Ex. A.

The Company is governed by an Amended and Restated Limited Liability Company Operating Agreement (the "LLC Agreement").  The LLC Agreement designates MHHI as the Company's "Operating Manager."  LLC Agt. § 6.1(c).  The LLC Agreement further provides that a board of managers (the "Board") shall have "exclusive authority to manage the operations and affairs of the Company and to make all decisions regarding the business of the Company . . . [and] shall have all the rights and powers of a manager as provided in the [Agreement]."  *Id.* § 6.1(a). The Board comprises four members, two appointed by AAFF and two appointed by MHHI.  *Id.* § 6.1(b).

Under Section 6.1(g) of the LLC Agreement, AAFF holds a tie-breaking vote in certain circumstances:

> [I]f on any matter requiring a Majority Vote of the Board of Managers, except for approval of the Annual Operating Budget . . . , there is a vote of 2-2, or if there is not sufficient attendance at a meeting of the Board

> of Managers in order to satisfy the quorum requirements, then any Manager shall have the right to request a second meeting to be held at least five (5) business days after such meeting (or attempted meeting) (the "Resolution Period") where such matter shall be reconsidered and the Managers shall use good faith to resolve such dispute prior to such meeting. If the vote at the second meeting is not a Majority Vote, or if there is not sufficient attendance at the second meeting to satisfy the quorum requirements, then AAFF or its appointed Managers shall have the tie-breaking vote in such matters other than those listed in section 4.6(b)(i)–(vii) which shall require unanimous consent of the Board.

*Id.* § 6.1(g). In addition, Section 6.1(m) of the LLC Agreement requires AAFF and MHHI to "cooperate to prepare and deliver prior to December 1 of each year a proposed operating budget . . . for the upcoming year." *Id.* § 6.1(m).

The LLC Agreement is governed by Delaware law but includes a forum selection provision purporting to require that actions or proceedings "arising out of or from or related to" the LLC Agreement be litigated in Hillsborough County, Florida (the "Forum Selection Provision"):

> Notwithstanding the [foregoing], the Members irrevocably agree that all actions or proceedings in any way, manner or respect, arising out of or from or related to this Operating Agreement shall be litigated only in courts having situs within Hillsborough County, Florida. Each Member hereby consents and submits to the jurisdiction of any local, state or federal court located within said county and state and hereby waives any rights it may have to transfer or change the venue of any such litigation.

*Id.* § 13.8.

The LLC Agreement includes two "waterfall" mechanisms (the "Waterfall Provisions") under which distributions may be made to members "at such time or times as determined by the Board of Managers in the exercise of its sole discretion[.]" *Id.* §§ 5.2, 5.3. Section 5.2 sets out an order of priority for distributing "Cash Flow" and Section 5.3 sets out an order of priority for distributing "Capital Proceeds" and Cash Flow. *See id.* §§ 5.2(e), 5.3(h). Separately, Section 6.3 requires the Company to set aside a portion of annual Cash Flow as a reserve for certain payments, while Section 4.3 requires that "the First Priority Return on [AAFF's] First Priority Contribution shall be paid from the reserve for such purpose described in Section 6.3." *See id.* §§ 6.3, 4.3(b).

As alleged, in 2024, Plaintiff learned that the Company had made at least two distributions totaling more than $3 million to AAFF but not to Plaintiff. Am. Compl. ¶¶ 29–30. Plaintiff asserted that the Company had breached the LLC Agreement's Waterfall Provisions by failing to make pro rata distributions of returns to Plaintiff. *Id.* ¶ 31. The Company responded that the distributions to AAFF were made under Sections 4.3 and 6.3 of the LLC Agreement and "did NOT come from either [C]ash [F]low or [C]apital [P]roceeds so there is no possibility that [Sections] 5.2 and 5.3 apply." *Id.*, Ex. 3 at 1.

On October 31, 2025, Plaintiff initiated this action through the filing of a Verified Complaint, naming the Company and AAFF as defendants. Verified Compl., Dkt. 1. Plaintiff filed the operative Verified Amended Complaint (the "Amended Complaint") on January 30, 2026. Am. Compl. The Amended Complaint advances two counts. Count I alleges that the Company and AAFF breached the LLC Agreement by directing and approving distributions to AAFF in violation of the Waterfall Provisions and amending or modifying the LLC Agreement without Plaintiff's consent. *Id.* ¶¶ 45–50. Count II seeks a declaratory judgment that Sections 4.3 and 6.3 of the LLC Agreement do not provide an alternative to the Waterfall Provisions. *Id.* ¶¶ 51–55. Defendants moved to dismiss the Amended Complaint (the "Motion to Dismiss").[1] The Court heard oral argument on the Motion to Dismiss on July 31. Dkt. 30.

---

[1] On February 13, 2026, Defendants filed their opening brief in support of the Motion to Dismiss. Opening Br. in Supp. of Defs.' Mot. to Dismiss Verified Am. Compl. [hereinafter OB], Dkt. 17. On April 8, Plaintiff filed its answering brief in opposition to the Motion to Dismiss. Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss the Verified Am. Compl. [hereinafter AB], Dkt. 24. On April 23, Defendants filed their reply brief in further support of the Motion to Dismiss. Reply Br. in Supp. of Defs.' Mot. to Dismiss Verified Am. Compl. [hereinafter RB], Dkt. 26.

## II.   ANALYSIS

Defendants have moved to dismiss the Amended Complaint under Court of Chancery Rules 12(b)(2) for lack of personal jurisdiction over AAFF, 12(b)(3) for improper venue, 12(b)(6) for failure to state a claim upon which relief may be granted, and 12(b)(7) for failure to join indispensable parties. For the reasons below, the motion to dismiss for improper venue is denied. The motion to dismiss for lack of personal jurisdiction over AAFF, failure to state a claim, and failure to join indispensable parties is deferred pending jurisdictional discovery.

### A.   The Motion To Dismiss For Improper Venue Is Denied.

Defendants argue that Delaware venue is improper because the Forum Selection Provision in the LLC Agreement requires actions "arising out of or from or related to" the LLC Agreement to be litigated in Hillsborough County, Florida. LLC Agt. § 13.8.

"Under Court of Chancery Rule 12(b)(3), a court will grant a motion to dismiss based upon a forum selection clause where the parties 'use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action.'" *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (quoting *Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at *1 (Del. Ch. Mar. 21, 1996)). "The

courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'" *Id.* (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)).

However, Title 6, Section 18-109(d) limits the ability of a non-managing member of a limited liability company to waive its right to litigate in Delaware:

> In a written limited liability company agreement or other writing, a manager or member may consent to be subject to the nonexclusive jurisdiction of the courts of, or arbitration in, a specified jurisdiction, or the exclusive jurisdiction of the courts of the State of Delaware, or the exclusivity of arbitration in a specified jurisdiction or the State of Delaware, and to be served with legal process in the manner prescribed in such limited liability company agreement or other writing. Except by agreeing to arbitrate any arbitrable matter in a specified jurisdiction or in the State of Delaware, *a member who is not a manager may not waive its right to maintain a legal action or proceeding in the courts of the State of Delaware with respect to matters relating to the organization or internal affairs of a limited liability company*.

6 *Del. C.* § 18-109(d) (emphasis added). In 1999, the Delaware Supreme Court held that the first sentence of Section 18-109(d) does not prohibit a Delaware limited liability company from including a provision in its limited liability company agreement choosing a non-Delaware forum as the exclusive forum for litigating disputes arising out of the agreement. *See Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 296 (Del. 1999) ("Although Section 18–109(d) fails to mention that the

parties may agree to the exclusive jurisdiction of a foreign jurisdiction, the Act clearly does not state that the parties must agree to either one of the delineated options for subject matter jurisdiction."). After that decision, Section 18-109(d) was amended to add its second sentence.

> The second sentence establishes a more modest limitation on forum selection clauses than what the first sentence might have proscribed by implication. Before its definitive interpretation in *Elf Atochem*, the negative pregnant in the first sentence might have suggested that a forum section clause in an LLC agreement could not eliminate Delaware as a forum except by providing for exclusive arbitration. The plain language of the second sentence only extends to non-managing members, and it only preserves the ability of a non-managing member to bring or maintain a suit in Delaware. It does not encompass other types of claimants under an LLC agreement, and it does not mandate that all litigation involving internal governance disputes with non-managing members take place in the Delaware courts.

*Li v. loanDepot.com, LLC*, 2019 WL 1792307, at *2 (Del. Ch. Apr. 24, 2019).

Defendants argue that the second sentence of Section 18-109(d) does not apply here. Although Defendants agree that Plaintiff is a non-managing member, they submit that "Section 18-109(d) does not apply to suits against other members." OB at 14–15. That is not what the statute says. The second sentence of Section 18-109(d) states that "a member who is not a manager may not waive its right to maintain a legal action or proceeding" in Delaware with respect to certain matters.

6 *Del. C.* § 18-109(d). It does not address, much less limit, who the member may sue in Delaware courts.

Defendants further argue that the second sentence of Section 18-109(d) does not apply because this action does not concern "matters relating to the . . . internal affairs of a limited liability company." OB at 14–15. While the Limited Liability Company Act does not define "internal affairs," the term generally refers to matters concerning relationships among a company, its fiduciaries, and its equity holders. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (defining "internal affairs" to mean "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"); *McDermott Inc. v. Lewis*, 531 A.2d 206, 214 (Del. 1987) (same). In the context of a limited liability company, that includes the company, its managers, and its members. *See, e.g.*, *Techno-X USA Inc. v. Spartan Forge LLC*, 2025 WL 1625387, at *6 (Del. Ch. June 9, 2025) ("[T]he LLC Agreement governs [defendant's] internal affairs, management, and the relationship among [defendant's] members.").

Plaintiff alleges that the Company has violated the LLC Agreement by making payments to AAFF in contravention of the Waterfall Provisions therein. Am. Compl. ¶¶ 31, 37. Resolving the dispute requires interpreting the LLC Agreement under Delaware law to determine the obligations of the managers and rights of the

members. That determination "concerns matters relating to the . . . internal affairs of" the Company. *See, e.g.*, *Deane v. Maginn*, 2024 WL 369614, at *3 (Del. Ch. Jan. 31, 2024) (applying Delaware law to a dispute involving "the purported resignations of (and distributions to) members of" a Delaware limited liability company because such a dispute "implicates the internal affairs of a Delaware entity insofar as it 'pertain[s] to the relationships among or between the [company] and its officers, directors, and [members]'") (quoting *Miramar Police Officers' Ret. Plan v. Murdoch*, 2015 WL 1593745, at *12 (Del. Ch. Apr. 7, 2015)); *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, 2017 WL 3575712, at *7 (Del. Ch. Aug. 18, 2017) ("[A] claim to enforce [an] entity's constitutive document necessarily implicates the special interest that a sovereign has in adjudicating cases involving the internal affairs of entities created under its laws."), *aff'd*, 184 A.3d 1290 (Del. 2018) (TABLE). Section 18-109(d) therefore prohibits Plaintiff from waiving its right to file this action in Delaware, notwithstanding the Forum Selection Provision.

Because the Forum Selection Provision is unenforceable as it concerns this action, the Motion to Dismiss for improper venue is denied.

## B. The Motion To Dismiss For Lack Of Personal Jurisdiction Is Deferred Pending Jurisdictional Discovery.

Defendants next contend that the Court lacks personal jurisdiction over AAFF. "When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant." *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007). "The court engages in a two-step analysis: the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice." *Id.*

Plaintiff contends that AAFF impliedly consented to personal jurisdiction in Delaware under 6 *Del. C.* § 18-109(a). That statute states that a manager of a limited liability company may be served with process in civil actions brought in Delaware "involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company," a manager's serving as such constitutes consent to the appointment of the registered agent for service of process, and service as a manager "shall signify" the manager's consent to service in Delaware. 6 *Del. C.* § 18-109(a). Section 18-109(a) defines a "manager" to include a person who "participates materially in the management of the limited liability company; provided however, that the power to elect or otherwise select or

to participate in the election or selection of a person to be a 'manager' . . . shall not, by itself, constitute participation in the management of the limited liability company." 6 *Del. C.* § 18-109(a).[2]

Defendants argue that Section 18-109(a) does not confer personal jurisdiction over AAFF because the Amended Complaint insufficiently pleads that AAFF "exercised operational control." RB at 3. In response, Plaintiff points to allegations that under the LLC Agreement, AAFF has the power to appoint half of the Company's Board members, cast the tie-breaking vote in the event of Board deadlock, and (with MHHI) prepare and deliver the Company's annual operating budget. *See* AB at 13–16; *id.* at 16 ("[While] [t]he Agreement labels AAFF a non-managing member; its actual powers—voting control, tie breaking authority, budget preparation, and direct influence over distributions—tell a different story."); LLC Agt. §§ 6.1(b), (d), (g), (i), (m). Plaintiff further alleges that AAFF "orchestrated" the disputed payments, and the Amended Complaint attaches an email exchange that could be read to suggest AAFF played a more than passive role. Am. Compl. ¶ 36; *id.*, Ex. 3. Defendants counter that "Plaintiff pleads no facts showing . . . AAFF

---

[2] Plaintiff also argues that AAFF's participation in the formation of the Company demonstrates that AAFF has "transact[ed] business within the State" under 10 *Del. C.* § 3104(c)(1). *See* AB at 18.

displaced the Board or operating manager or exercised ongoing operational control."

RB at 4.

Where a plaintiff has "provided 'some indication' that the particular defendant is amenable to suit, then jurisdictional discovery is appropriate." *MacLaughlan v. Einheiber*, 354 A.3d 864, 885 (Del. Ch. 2026) (citation omitted). "To establish a right to conduct limited discovery on the issue of jurisdiction, a plaintiff must 'establish with reasonable particularity the possible existence of requisite contacts' within the State of Delaware." *Xactus, LLC v. Sike*, 2024 WL 3947319, at *8 (Del. Ch. Aug. 27, 2024) (quoting *CLP Toxicology, Inc. v. Casla Bio Hldgs. LLC*, 2020 WL 3564622, at *15 (Del. Ch. June 29, 2020)). Even if the allegations of the Amended Complaint are not quite enough to support the Court's exercise of personal jurisdiction over AAFF, they provide a sufficient basis to order jurisdictional discovery into the question of AAFF's status as a *de facto* manager. *See, e.g.*, *Red Cat Hldgs., Inc. v. Autonodyne LLC*, C.A. No. 2022-0878-NAC, Dkt. 47 (Del. Ch. Jan. 30, 2024) (ORDER) (ordering jurisdictional discovery where a defendant was alleged to have "'participate[d] materially in' the Company's 'management' and 'day-to-day operations'").

The parties are directed to meet and confer on the scope of jurisdictional discovery.

**C.    The Motion to Dismiss For Failure To State A Claim And For Failure To Join Indispensable Parties Is Also Deferred.**

Defendants also argue that the Amended Complaint should be dismissed for failure to state a claim and failure to join indispensable parties.

Because personal jurisdiction "presents a threshold question that a court can and should address up front, before reaching the merits," I defer decision on the motion to dismiss for failure to state a claim until the question of personal jurisdiction over AAFF has been resolved. *MacLaughlan*, 354 A.3d at 883.

On the issue of indispensable parties, Defendants contend that all four members of the Company are necessary and indispensable parties because the action will impact the rights of all members. OB at 17. Court of Chancery Rule 19 establishes a multi-step process for determining whether an absent person is necessary or indispensable to the litigation. First, "the court must determine whether an absent person should be a party to the litigation." *Makitka v. New Castle Cty. Council*, 2011 WL 6880676, at \*2 (Del. Ch. Dec. 23, 2011); Ct. Ch. R. 19(a). If parties should be joined, the Court must determine whether joinder is feasible. *Makitka*, 2011 WL 6880676, at \*2. If joinder is not feasible, Rule 19(b) calls for a "balancing test whereby the Court must determine whether the action can equitably proceed without the absent party." *Council of Civic Orgs. of Brandywine Hundred, Inc. v. New Castle Cty.*, 1991 WL 279374, at \*2 (Del. Ch. Dec. 26, 1991). The

personal jurisdiction analysis could obviate this argument. If the Court finds it has personal jurisdiction over AAFF, the argument that it is an indispensable party will be moot, and because the Company's two absent members, MHHI and HHSI, are Delaware entities, bringing them into Delaware court would not present a significant obstacle to this case moving forward. If the issue is not mooted, the personal jurisdiction analysis still may impact any balancing test the Court will conduct. I therefore reserve decision on this argument until personal jurisdiction over AAFF is determined.

## III.   CONCLUSION

For the reasons explained above, the Motion to Dismiss is denied in part and deferred in part. The parties are directed to meet and confer on the scope of jurisdictional discovery.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)